1

2

3                    UNITED STATES DISTRICT COURT

4                   CENTRAL DISTRICT OF CALIFORNIA
                           WESTERN DIVISION
5

6

7  CNA NATIONAL WARRANTY              )
   CORPORATION,                       )
8                                     )
                                      )
9            PLAINTIFF,               )
                                      )
10               V.                   )
                                      )
11                                    )
   RHN, INC., ET AL,                  )
12                                    )
                                      )   CV 20-04595-CJC(AS)
13           DEFENDANTS.              )   DECEMBER 1, 2020
                                      )   LOS ANGELES, CALIFORNIA
14  _____)

15

16                           HEARING

17            BEFORE THE HONORABLE ALKA SAGAR
              UNITED STATES MAGISTRATE JUDGE
18

19  APPEARANCES:              SEE NEXT PAGE

20  COURT REPORTER:           RECORDED; AT&T

21  COURTROOM DEPUTY:         ALMA FELIX

22  TRANSCRIBER:              DOROTHY BABYKIN
                              COURTHOUSE SERVICES
23                            1218 VALEBROOK PLACE
                              GLENDORA, CALIFORNIA  91740
24                            (626) 963-0566

25  PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
    TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

2

1   APPEARANCES:

2   FOR THE PLAINTIFF CNA NATIONAL WARRANTY CORPORATION:

3
                SQUIRE PATTON BOGGS (US) LLP
4               BY:  ELLIOTT J. JOH
                    ATTORNEY AT LAW
5               275 BATTERY STREET
                SUITE 2600
6               SAN FRANCISCO, CALIFORNIA  94111

7               SQUIRE PATTON BOGGS (US) LLP
                BY:  G. DAVID GODWIN
8                   ATTORNEY AT LAW
                555 SOUTH FLOWER STREET
9               31ST FLOOR
                LOS ANGELES, CALIFORNIA  90071
10

11  FOR DEFENDANTS RHN, INC., ET AL.:

12
                GLASER WEIL FINK JACOBS HOWARD
13                AVCHEN & SHAPIRO LLP
                BY:  KERRY GARVIS WRIGHT
14                  PATRICIA L. GLASER
                    WILLIAM COLIN MULLEN
15                  ATTORNEYS AT LAW
                10250 CONSTELLATION BOULEVARD
16              19TH FLOOR
                LOS ANGELES, CALIFORNIA  90067
17

18

19

20

21

22

23

24

25

3

1                                I N D E X

CV 20-04595-CJC(AS)                          DECEMBER 1, 2020

2

PROCEEDINGS:    PLAINTIFF'S APPLICATION FOR PARTIAL LIFT OF STAY

3                  AND RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE

                 OF WRIT OF ATTACHMENT

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          LOS ANGELES, CALIFORNIA; DECEMBER 1, 2020

2          THE CLERK:  CALLING CASE NUMBER CV 20-4595-CJC(ASX),

3   CNA NATIONAL WARRANTY CORPORATION VERSUS RHN, INC., ET AL.

4          BEGINNING WITH PLAINTIFF, COUNSEL, PLEASE STATE YOUR

5   APPEARANCE FOR THE RECORD.

6          MR. JOH:  GOOD MORNING, YOUR HONOR.

7          ELLIOTT JOH OF SQUIRE PATTON & BOGGS APPEARING ON

8   BEHALF OF PLAINTIFF CNA NATIONAL WARRANTY CORPORATION.

9          MY COLLEAGUE DAVE GODWIN IS ALSO ON THE LINE.

10         THE COURT:  OKAY.  GOOD MORNING.

11         (PAUSE IN PROCEEDINGS.)

12         MS. GARVIS WRIGHT:  GOOD MORNING, YOUR HONOR.

13         KERRY GARVIS WRIGHT OF GLASER WEIL FOR THE

14  DEFENDANTS.

15         ALSO ON THE LINE IS PATRICIA GLASER AND WILLIAM

16  MULLEN.

17         THE COURT:  OKAY.  GOOD MORNING.

18         THIS IS JUDGE SAGAR.  AND THIS IS THE HEARING ON THE

19  PLAINTIFF'S APPLICATION FOR PARTIAL LIFT OF THE STAY AND RIGHT

20  TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT.

21         THAT APPLICATION WAS FILED ON OCTOBER 30TH, 2020 AT

22  DOCKET 58.

23         AN OPPOSITION WAS FILED BY THE DEFENDANTS ON NOVEMBER

24  10TH, 2020 AT DOCKET 60.

25         AND PLAINTIFF FILED A REPLY ON NOVEMBER 17TH, 2020 AT

5

1    DOCKET 52.

2                LET ME FIRST ASK WHAT IS THE STATUS OF THE ARIZONA

3    ACTION?

4                MS. GARVIS WRIGHT:  THE ARIZONA --

5                YOUR HONOR, THIS IS KERRY GARVIS WRIGHT.

6                THE ARIZONA ACTION REMAINS PENDING.  ALTHOUGH OUR LAW

7    FIRM IS NOT COUNSEL OF RECORD THERE.

8                THE COURT:  ALL RIGHT.

9                SO, JUDGE WALSH ON AUGUST 11TH, 2020 GRANTED THE

10   PLAINTIFF'S APPLICATION FOR WRIT OF ATTACHMENT -- PRETTY MUCH

11   THE SAME APPLICATION THAT IS BEFORE ME NOW -- BUT CONDITIONED

12   IT ON THE COURT'S DENIAL OF DEFENDANTS' MOTION TO DISMISS WHICH

13   WAS THEN PENDING BEFORE JUDGE CARNEY.

14               ON AUGUST 18TH JUDGE CARNEY DENIED THE MOTION TO

15   DISMISS AND STAYED THIS CASE PENDING THE OUTCOME OF THE ARIZONA

16   ACTION.

17               SO, IS THIS APPLICATION FOR PARTIAL LIFT OF THE STAY

18   THAT THE PLAINTIFF HAS FILED SEEKING A LIFT OF THE STAY THAT

19   JUDGE CARNEY ISSUED BACK IN AUGUST WHEN HE DENIED THE

20   DEFENDANTS' MOTION TO DISMISS?

21               MR. JOH:  THIS IS ELLIOTT JOH FOR THE PLAINTIFF.

22               THAT IS CORRECT, YOUR HONOR.  JUST --

23               THE COURT:  ALL RIGHT.

24               MR. JOH:  -- A LIFT OF THE STAY THAT JUDGE CARNEY

25   ISSUED, YES.

6

1                THE COURT:  ALL RIGHT.  AND THE STAY WAS ISSUED SO

2       THAT THE ARIZONA ACTION COULD PROCEED.  AND THEN THERE WOULD BE

3       A DETERMINATION OF WHETHER PLAINTIFFS WERE -- PLAINTIFF WAS

4       ENTITLED TO EXECUTE ITS RIGHT TO ATTACH ORDER.

5                IS THAT RIGHT?

6                MR. JOH:  I BELIEVE SO, YOUR HONOR.  I BELIEVE IT WAS

7       TO ALLOW THE ARIZONA ACTION TO CONTINUE.

8                AND -- AND SINCE THEN WE WERE ABLE TO OBTAIN THE WRIT

9       FROM -- FROM YOUR HONOR.

10               THE COURT:  ALL RIGHT.  AND WHAT IS THE STATUS OF THE

11      ARIZONA ACTION?

12               MR. GODWIN:  YOUR HONOR, THIS IS DAVE GODWIN.  I'M

13      PRIMARY COUNSEL IN THE ARIZONA ACTION FOR PLAINTIFFS.

14               THAT ACTION IS IN THE COMPLETION OF DISCOVERY

15      PROCESS.  THERE ARE SEVERAL DISCOVERY RELATED MOTIONS.

16               THE COURT HAS NOT SET A TRIAL DATE.  BUT THERE WILL

17      BE DISPOSITIVE MOTIONS PROBABLY THE BEGINNING OF THE YEAR.  AND

18      AT THAT POINT IN TIME WE MAY GET A TRIAL DATE.

19               THIS CASE WAS STAYED ONLY AFTER THE WRITS WERE

20      GRANTED.  AND WE HAVE ATTEMPTED TO EXECUTE ON THE ORIGINAL

21      WRITS AGAINST THE DEALERSHIP DEFENDANTS.  BUT THE -- THOUGH WE

22      HAVE LEARNED THAT THOSE DEFENDANTS ARE NOW OUT OF BUSINESS AND

23      HAVE SOLD ALL THEIR ASSETS WHICH IS WHY WE'RE COMING BACK AT

24      THIS POINT FOR A WRIT AS TO THE OTHER DEFENDANT PARTIES AND

25      THEIR ASSETS WHICH WE BELIEVE STILL EXIST.

1                SO, THE STAY WAS NOT TO PREVENT EXECUTION OF THE WRIT

2     BUT JUST TO PREVENT ANYTHING FURTHER IN THIS ACTION HAPPENING

3     LIKE RESPONSIVE PLEADINGS OR THINGS LIKE THAT.

4                THE COURT:  ALL RIGHT.

5                MS. GARVIS WRIGHT:  YOUR HONOR, THIS IS MS. GARVIS

6     WRIGHT.

7                I CAN'T SPEAK TO WHAT EFFORTS THERE MAY HAVE BEEN TO

8     ATTEMPT TO EXECUTE ON THE PRIOR WRITS OF ATTACHMENT.

9                WHAT I CAN SAY IS THAT IN THE MOVING PAPERS PLAINTIFF

10    REPRESENTS THAT MR. NISSANI TESTIFIED IN THE ARIZONA ACTION

11    THAT'S ALL OF THE DEALERSHIP DEFENDANTS.  THAT IS, FIVE OF THE

12    DEFENDANTS IN THIS ACTION ARE NO LONGER OPERATING AND HAVE NO

13    ASSETS.

14               AGAIN, OUR FIRM IS NOT COUNSEL OF RECORD IN THAT

15    ACTION.  BUT WE LOOKED AT THE DEPOSITION TRANSCRIPTS THAT

16    PLAINTIFF OFFERED IN SUPPORT OF THIS WRIT APPLICATION.  AND OUR

17    REVIEW OF THAT TRANSCRIPT -- TRANSCRIPT SHOWS THAT MR. NISSANI

18    TESTIFIED ABOUT ONLY TWO OF THE DEALERSHIP DEFENDANTS NOT

19    HAVING ANY ASSETS.  AND THEN PLAINTIFF'S COUNSEL INQUIRED ABOUT

20    A THIRD.  AND THE QUESTION WAS WHETHER OR NOT THAT ENTITY HAD

21    ANY HARD ASSETS.

22               SO, TO THE EXTENT THAT THE APPLICATION WAS PREDICATED

23    ON THIS NOTION THAT THE DEALERSHIP -- THE FIVE-DEALERSHIP

24    DEFENDANTS AGAINST WHOM THE PRIOR WRIT WAS ENTERED HAVE NO

25    ASSETS, THAT SHOWING HAS NOT BEEN MADE.

1        AND NOW THEY SEEK TO ATTACH THE PERSONAL ASSETS OF

2    MR. NISSANI AND HIS WIFE, MELODY NISSANI, WHICH, OF COURSE, IS

3    A VERY EXTREME REMEDY WHICH WE DON'T BELIEVE IS -- IS WARRANTED

4    HERE.

5        THE COURT:  ALL RIGHT.

6        LET ME ASK THE PLAINTIFF -- PLAINTIFF'S COUNSEL TO

7    JUST RESPOND TO THAT.

8        IS THERE A PROBLEM WITH GRANTING PLAINTIFF'S

9    APPLICATION IF IN FACT -- OR IS THE APPLICATION SORT OF

10   CONDITIONED ON THE COURT'S ACCEPTING PLAINTIFF'S CONTENTION

11   THAT THE DEALERSHIP ASSETS ARE NOT AVAILABLE FOR WRIT OF

12   ATTACHMENT.  AND, THEREFORE, IT'S NECESSARY FOR PLAINTIFF TO

13   ATTACH THE DEFENDANTS' PERSONAL ASSETS?

14       MR. JOH:  THIS IS ELLIOTT JOH, YOUR HONOR.

15       NO, IT IS NOT CONDITIONED UPON THAT FINDING.

16       AND WE DISPUTE THE DEFENDANTS' CHARACTERIZATION OF

17   MR. NISSANI'S TESTIMONY WHICH WE BELIEVE SPEAKS FOR ITSELF.

18       MR. NISSANI IS OF COURSE THE GUARANTOR OF THE

19   DEALERSHIPS' OBLIGATIONS IN FULL UNDER THE OVERRIDE AGREEMENT.

20   AND HE -- AS A RESULT HE IS JOINTLY AND SEVERALLY LIABLE FOR

21   THE ENTIRE AMOUNT THAT EACH OF THOSE DEALERSHIPS OWE UNDER THE

22   OVERRIDE AGREEMENT.  SO --

23       THE COURT:  OKAY.

24       MR. JOH:  -- WHETHER OR NOT --

25       YEAH.

1          THE COURT:  ALL RIGHT.  OKAY.

2          SO, I DON'T SEE ANYTHING IN THE APPLICATION IN THE

3   OPPOSITION THAT WAS FILED BEFORE ME THAT DIFFERS FROM WHAT WAS

4   PRESENTED TO JUDGE -- MATERIALLY DIFFERS FROM WHAT WAS

5   PRESENTED TO JUDGE WALSH.  AND I DON'T SEE ANY REASON FOR NOT

6   GRANTING THE APPLICATION.

7          I NOTE THAT PLAINTIFF IN -- PLAINTIFF -- SORRY --

8   DEFENDANTS IN THEIR OPPOSITION, MR. NISSANI ASSERTS THAT HE

9   EXECUTED A DIFFERENT VERSION OF THE OVERRIDE AGREEMENT.  BUT

10  THAT VERSION THAT WAS SUBMITTED HAS NOT BEEN EXECUTED BY THE

11  PLAINTIFF.

12          AND, SO, THE COURT, YOU KNOW, DOESN'T ACCEPT THAT AS

13  THE BINDING AGREEMENT OF THE PARTIES.

14          THE COURT ALSO ACCEPTS PLAINTIFF'S CONTENTIONS THAT

15  DEFENDANT EXPLICITLY REFERENCED THE AGREEMENT THAT WAS EXECUTED

16  BY ALL THE PARTIES THAT WAS ATTACHED TO THE COMPLAINT IN THEIR

17  MOTION TO DISMISS AND THEIR REPLY IN SUPPORT OF THAT MOTION

18  WHICH THE COURT RELIED ON IN ISSUING ITS ORDER DENYING THE

19  MOTION TO DISMISS.  AND, SO, DEFENDANTS ARE NOW ESTOPPED FROM

20  DISPUTING THE AUTHENTICITY OF THAT AGREEMENT.

21          AND WITH RESPECT TO THE DEFENDANTS' ARGUMENT

22  REGARDING THE CALCULATION THAT THE PLAINTIFF HAS MADE, THE

23  COURT ACCEPTS THE DEFENDANTS' -- SORRY -- ACCEPTS THE

24  PLAINTIFF'S POSITION ON THAT, THAT THE WHOLE ISSUE OF

25  REINSURANCE IS SORT OF AN UNRELATED -- YOU KNOW, PERTAINS TO

1   UNRELATED AGREEMENTS THAT THE -- THAT MR. NISSANI WAS NOT A

2   PARTY TO, THAT THE DEFENDANTS WERE NOT A PARTY TO.  AND,

3   THEREFORE, THEY DON'T HAVE THE ABILITY TO -- TO CHALLENGE

4   THAT.

5           THE COURT ALSO HAS LOOKED AT THE EXHIBITS THAT WERE

6   ATTACHED TO MR. NISSANI'S DECLARATION REGARDING HIS

7   UNDERSTANDING THAT THE PLAINTIFF WOULD ADMINISTER THESE

8   PROCEEDS FROM THE VEHICLE SERVICE CONTRACTS IN A -- IN A SORT

9   OF INVESTMENT VEHICLE AND DOES NOT FIND EXHIBITS 3 AND 4 TO

10  SUPPORT ANY REASONABLE BELIEF BY MR. NISSANI THAT THE PLAINTIFF

11  SORT OF APPROVED THE USE OF THE FINANCIAL INSTITUTION MR.

12  NISSANI WANTED TO USE OR THE REINSURANCE COMPANY OR THE MANNER

13  IN WHICH THOSE PROCEEDS WOULD BE INVESTED.

14          AND, SO, THE COURT FINDS THAT THE PLAINTIFF HAS

15  APPROPRIATELY CALCULATED THE AMOUNT THAT IS DUE TO IT.  ITS

16  CALCULATIONS ARE -- ARE BASED ON A FIXED OR READILY

17  ASCERTAINABLE AMOUNT CONSISTENT WITH THE FINDING THAT JUDGE

18  WALSH MADE IN AUGUST OF 2020.

19          AND, SO, THE COURT IS GOING TO GRANT PLAINTIFF'S

20  APPLICATION --

21          MS. GARVIS WRIGHT:  YOUR HONOR --

22          THE COURT:  -- FOR PARTIAL LIFT OF STAY AND RIGHT TO

23  ATTACH ORDER AND ISSUE THE ORDER FOR THE WRIT OF ATTACHMENT.

24          MS. GARVIS WRIGHT:  YOUR HONOR, THIS IS --

25          THE COURT:  AND, SO, I'LL HEAR ARGUMENT ON THAT, BUT

1   THOSE ARE MY PRELIMINARY THOUGHTS.

2           MS. GARVIS WRIGHT:  THANK YOU, YOUR HONOR.  THIS IS

3   MS. GARVIS WRIGHT.

4           I WANT TO START WITH THE VERSION OF THE AGREEMENT

5   THAT MR. NISSANI CONTENDS WAS THE PARTIES' AGREEMENT.

6           AND YOU'RE CORRECT, OF COURSE, THAT IT WAS NOT

7   COUNTERSIGNED BY CNA THAT WE KNOW OF -- AT LEAST THEY HAVEN'T

8   PRODUCED THAT COPY.

9           BUT THE PARTIES ACTED IN RELIANCE ON THE HANDWRITTEN

10  INTERLINEATION.

11          AND THE NOTION OF ESTOPPEL, I DON'T THINK THAT CNA

12  WAS INTENTIONALLY ENDEAVORING TO MISLEAD THE COURT OR MISSTATE

13  WHAT THE RECORD IS.  BUT, IN FACT, THE DEFENDANTS, THE

14  DEALERSHIP DEFENDANTS, IN THEIR OPPOSITION TO THE ORIGINAL SET

15  OF APPLICATION -- WRIT APPLICATION PAPERS SPECIFICALLY

16  REFERENCED THE HANDWRITTEN INTERLINEATED VERSION AND CONTENDED

17  IN THAT DOCUMENT THAT THAT IS THE OPERATIVE AGREEMENT.

18          AND THAT WAS FILED ON THE SAME DAY I BELIEVE AS THE

19  MOTION TO DISMISS.  AND WHAT -- WHAT WAS SAID IN THE MOTION TO

20  DISMISS ISN'T ACCURATELY CITED OR CHARACTERIZED FOR THAT MATTER

21  BY CNA IN ITS PAPERS.

22          WHAT WAS SAID IN THAT MOTION -- BECAUSE CNA WAS

23  COMING FORWARD TO THIS COURT SAYING WE ARE -- CNA IS ENTITLED

24  TO RELIEF IN THIS COURT.

25          AND WE SAID -- THIS IS -- THIS IS THE QUOTE FROM OUR

1  PAPERS:

2       "THIS FORUM SELECTION CLAUSE THAT IS IN THE OVERRIDE

3       AGREEMENT -- THIS FORUM SELECTION CLAUSE WHICH CNA

4       INCLUDED IN THE OVERRIDE AGREEMENT IS VALID AND

5       BINDING ON THE PARTIES TO THE OVERRIDE AGREEMENT.

6       AND IT PRECLUDES CNA FROM PURSUING ITS WRIT

7       APPLICATION IN THIS COURT."

8       SO, WHAT WAS SAID THERE IS THAT IT'S THE FORUM

9  SELECTION CLAUSE THAT IS VALID AND BINDING.  AND THE FORUM

10 SELECTION CLAUSE IS IDENTICAL IN THE VERSION THAT CNA CONTENDS

11 IS OPERATIVE AND IN THE VERSION THAT MR. NISSANI CONTENDS IS

12 OPERATIVE.

13      SO, IT WASN'T A CONCESSION THAT THE VERSION CNA IS

14 OFFERING IS THE CORRECT VERSION.  BUT INSTEAD IT WAS A

15 DISCUSSION ABOUT THE FORUM SELECTION CLAUSE WHICH IS IDENTICAL

16 IN BOTH VERSIONS OF THE AGREEMENT.

17      AND, SO, IT'S NOT ACCURATE FOR CNA TO SAY IN ITS

18 PAPERS THAT AFTER SIX MONTHS OF BRIEFING IN THIS CASE NOT ONCE

19 DID THE DEFENDANTS CONTEND THAT THE VERSION THAT CNA IS

20 OFFERING IS NOT VALID OR ENFORCEABLE.  ABSOLUTELY NOT TRUE.

21      AND, SO, OUR OPPOSITION IS DOCUMENT 27.  AND, SO, IF

22 YOUR HONOR HAS ANY QUESTIONS, YOU CAN TAKE A LOOK AT THAT.

23      SO -- SO, FROM THE OUTSET -- AND, IN FACT, THAT IS

24 THE CRUX OF THIS CASE.  AND IT'S THE CRUX OF THE ARIZONA CASE

25 WHETHER THE VERSION THAT MR. NISSANI CONTENDS IS OPERATIVE WITH

1   THE HANDWRITTEN INTERLINEATIONS IS OPERATIVE OR CNA'S.

2          AND JUDGE WALSH WHEN RULING ON THE ORIGINAL WRIT

3   APPLICATION DID NOT MAKE ANY FINDING EXPLICITLY OR I BELIEVE

4   IMPLICITLY ABOUT WHICH AGREEMENT IS -- IS OPERATIVE.

5          AND, SO, MAKING A FINDING HERE ACTUALLY WOULD BE

6   IMPROPER.  AND I BELIEVE THAT WOULD BE THE REASON TO STAY THIS

7   CASE WHICH IS YOU ALLOW THE ARIZONA COURT TO DETERMINE THIS

8   VERY CENTRAL ISSUE WHICH AGREEMENT IS VALID AND ENFORCEABLE.

9          AND, SO, I DON'T THINK IT'S -- IT WOULD BE

10  APPROPRIATE TO MAKE THAT FINDING HERE.

11         AND THEN THE REASON IT'S SIGNIFICANT HERE -- THAT IS,

12  THAT THE HANDWRITTEN INTERLINEATION SHOULD BE AT LEAST

13  CONSIDERED BY YOUR HONOR -- AND, PERHAPS, THIS IS A CASE WHERE

14  THERE NEEDS TO BE DISCOVERY.  BUT I DON'T THINK SO.  I THINK

15  FACIALLY ON OUR PAPERS WE HAD DEMONSTRATED THAT THE HANDWRITTEN

16  INTERLINEATIONS ACTUALLY IMPACT THE AMOUNT THAT WOULD BE

17  POTENTIALLY OWED UNDER THE AGREEMENT BECAUSE IT DELETES CERTAIN

18  PRODUCTS AND CERTAIN MONTHLY REQUIREMENTS TO SELL THOSE

19  PRODUCTS.  AND, SO, NECESSARILY IT IMPACTS THE CALCULATION OF

20  THE AMOUNT THAT WOULD BE OWED.

21         AND UNDER MR. NISSANI'S CALCULATION, THAT IS 900 AND

22   -- $937,098.29, WHICH WE -- WE WOULD CONCEDE WOULD BE THE

23  APPROPRIATE AMOUNT, IF ANY, FOR THE WRIT OF APPLICATION TO --

24  TO APPLY.

25         THE COURT:  WELL, PART OF MR. NISSANI'S CALCULATIONS

1    INVOLVES A SET-OFF.

2              AND PLAINTIFF ARGUES THAT, YOU KNOW, THE OVERRIDE

3    AGREEMENT PROVIDES THAT THE DEFENDANTS WAIVE ALL RIGHTS OF

4    SET-OFF.  AND THAT PROVISION, THAT WAIVER PROVISION, IS -- IS

5    NOT INTERLINEATED --

6              MS. GARVIS WRIGHT:  TRUE.

7              THE COURT: -- IN THE VERSION THAT THE DEFENDANTS

8    CLAIM.

9              SO, I DON'T -- I DON'T SEE HOW THAT WOULD SORT OF

10   BOLSTER MR. NISSANI'S -- OR SUPPORT HIS CALCULATIONS.

11             MS. GARVIS WRIGHT:  YOU'RE RIGHT THAT THERE'S -- THAT

12   THAT'S WHAT THE PROVISION READS, THAT THERE'S NO OFFSET.

13             BUT I THINK YOUR HONOR DOESN'T EVEN NEED TO GET

14   THERE.

15             SO, WE CAN -- IN MY VIEW WE CAN IGNORE ENTIRELY THIS

16   ISSUE OF POTENTIAL OFFSET.  AND EVEN WITHOUT THAT YOU HAVE THE

17   ISSUE OF THE PRODUCTS UNDER THE OVERRIDE AGREEMENT THAT MR.

18   NISSANI CONTENDS HE WAS NOT OBLIGATED TO SELL.  OR EVEN IF HE

19   WAS OBLIGATED TO SELL THEM, IF HE DIDN'T MEET A MONTHLY OR

20   QUARTERLY REQUIREMENT, THAT WOULD NOT BE COUNTED AGAINST HIM.

21   AND IT WOULD NOT LEAD TO SHORTFALL FEES.

22             SO, WHAT -- WHAT CNA IS HOPING TO INCLUDE IN THIS

23   AMOUNT THAT WOULD BE SUBJECT TO THE WRIT OF ATTACHMENT INCLUDES

24   SHORTFALL PENALTIES.

25             SO, IT'S NOT SIMPLY THE REPAYMENT OF THE ORIGINAL

1    5-MILLION-DOLLAR ADVANCE.  INSTEAD, IT IS THE PENALTIES AND

2    FEES WHICH WE HAD ARGUED I BELIEVE TO SOME EXTENT WITH JUDGE

3    WALSH ARE NOT APPROPRIATE TO INCLUDE.

4              SO -- SO, IT REALLY COMES DOWN TO THIS ISSUE OF

5    READILY ASCERTAINABLE AMOUNT.  AND THAT HAS NOT BEEN SATISFIED

6    EVEN IF YOU TAKE OUT OF THE MIX THE ISSUE OF THE REINSURANCE

7    AND THE ISSUE OF WHETHER THAT WOULD EVEN BE A PERMISSIBLE

8    SET-OFF BECAUSE THE HANDWRITTEN INTERLINEATIONS CHANGED THE

9    MONTHLY REQUIREMENTS.

10             AND THEY'RE -- SO, NUMBER ONE, THAT DEMONSTRATES THAT

11   IT'S NOT LIKELY THAT CNA IS GOING TO RECOVER ON ITS UNDERLYING

12   CLAIM.

13             AND, TWO, EVEN -- EVEN IF IT WERE ABLE TO ESTABLISH

14   THAT, THERE'S NOT A READILY ASCERTAINABLE AMOUNT.

15             THE COURT:  WELL, ARE YOU CONTESTING THE -- CNA'S

16   RIGHT TO RECOVER THE 5-MILLION-DOLLAR ADVANCE?

17             MS. GARVIS WRIGHT:  THE FULL AMOUNT, YES.  IT IS

18   ENTITLED TO RECOVER WHAT WAS NOT REPAID OF THAT ADVANCE.

19             MR. JOH:  MAY I RESPOND, YOUR HONOR?

20             THE COURT:  AND, SO, THE -- I THINK THE DEFENDANTS

21   CLAIM THAT OF THE 5 MILLION, 1- -- 1,350,551.59 WAS REPAID?

22             IS THAT RIGHT?

23             MS. GARVIS WRIGHT:  THAT'S RIGHT.

24             THE COURT:  OKAY.

25             AND, SO, THEY CLAIM THEN THAT'S WHAT OWED -- WHAT

1  REMAINS DUE AND OWING IS 4,140,138.87.  AND IT'S FROM THAT

2  4-MILLION FIGURE THAT THEY SUBTRACT THEIR SET-OFF ON WHAT THEY

3  BELIEVE SHOULD HAVE BEEN REALIZED FROM THE INVESTMENT OF THE

4  FUNDS THAT THEY PAID, WHICH THE COURT SORT OF AGREES WITH THE

5  PLAINTIFF THAT THAT IS COMPLETELY UNFOUNDED AND VERY

6  SPECULATIVE.

7          SO, ARE YOU CONCEDING THEN THAT PLAINTIFF IS ENTITLED

8  TO AT LEAST 4,140,138.87?

9          MS. GARVIS WRIGHT:  NO, YOUR HONOR.

10          AND THAT BRINGS US RIGHT AROUND BACK TO THE ISSUE OF

11  WHAT WAS OBLIGATED TO BE SOLD UNDER THE OVERRIDE AGREEMENT AND

12  WHAT WAS APPROPRIATELY COUNTED FOR PURPOSES OF IMPOSING A

13  SHORTFALL FEE.  BECAUSE THOSE -- INCLUDED IN THAT 4-MILLION

14  FIGURE -- PLUS FIGURE IS SHORTFALL FEES.

15          THE COURT:  ALL RIGHT.  LET ME HEAR FROM THE COUNSEL

16  FOR PLAINTIFF ON THAT ISSUE.

17          MR. JOH:  THANK YOU, YOUR HONOR.  THIS IS ELLIOTT JOH

18  FOR CNA.

19          FIRST, I'LL RESPOND TO THE POINT ABOUT DEFENDANTS

20  NEVER -- DEFENDANTS BRINGING UP THE HANDWRITTEN INTERLINEATION

21  BEFORE.

22          WHAT THEY WROTE IN FOOTNOTE 3 TO THEIR OPPOSITION IN

23  THEIR PREVIOUS -- IN THEIR OPPOSITION TO THE PREVIOUS WRIT

24  APPLICATION IS THAT THE OVERRIDE AGREEMENT WAS NOT THE FINAL

25  VERSION OF THIS CONTRACT AND DID NOT INCLUDE MR. NISSANI'S

1   FINAL INTERLINEATION.

2           THAT IS A DIFFERENT INSERTION THAN THE ONE THAT MR.

3   NISSANI IS MAKING NOW, WHICH IS HE NEVER SIGNED THE FULLY

4   EXECUTED VERSION OF THE OVERRIDE AGREEMENT.

5           AND EVEN IF THE HANDWRITTEN INTERLINEATED VERSION OF

6   THE OVERRIDE AGREEMENT WERE TO BE CONSIDERED, DEFENDANTS HAVE

7   NOT EXPLAINED HOW THAT WOULD AFFECT THE PROBABLE VALIDITY OF

8   CNA'S CLAIMS AGAINST THEM.

9           THERE'S NO DISPUTE THAT THE PARTIES ENTERED INTO A

10  CONTRACTUAL RELATIONSHIP, THAT CNA PROVIDED THE DEFENDANTS WITH

11  A 5-MILLION-DOLLAR ADVANCE, THAT THE DEFENDANTS WERE REQUIRED

12  TO SELL CNA'S PRODUCT AND PAY BACK THAT ADVANCE, AND THAT THE

13  DEFENDANTS HAVE FAILED TO DO SO.

14          MR. NISSANI'S HANDWRITTEN CHANGES -- WHICH HAVE TO DO

15  WITH WHETHER THE DEALERSHIPS' OBLIGATIONS OCCUR ON A QUARTERLY

16  VERSUS A MONTHLY BASIS -- HAVE NO BEARING ON THE UNDISPUTED

17  FACT THAT THE DEFENDANTS OWE -- OWE AN AMOUNT TO CNA.

18          I KNOW THE PARTIES DISPUTE THAT AMOUNT.

19          AND AS YOUR HONOR CORRECTLY POINTED OUT, UNDER EITHER

20  VERSION OF THE OVERRIDE AGREEMENT THERE IS NOTHING IN EITHER

21  THAT OBLIGATES CNA TO INVEST SALE PROCEEDS ON BEHALF OF THE

22  DEFENDANTS.

23          AND THERE IS NO REASON IT WOULD BECAUSE THAT

24  INVESTMENT ARRANGEMENT IS GOVERNED BY OTHER AGREEMENTS

25  INVOLVING OTHER PARTIES.  IT INVOLVES FUNDS TO WHICH THE

1   DEFENDANTS HAVE NO RIGHT TO USE IN ORDER TO OFFSET THEIR

2   OBLIGATIONS UNDER THE OVERRIDE AGREEMENT.

3        FURTHERMORE, THOSE OTHER AGREEMENTS EXPRESSLY MAKE

4   HAILEY REINSURANCE COMPANY AND NOT CNA RESPONSIBLE FOR

5   INVESTING THOSE PROCEEDS.

6        THESE ARE THE SAME ARGUMENTS THAT THE DEFENDANTS MADE

7   IN OPPOSITION TO CNA'S PREVIOUS WRIT APPLICATION BOTH BEFORE

8   JUDGE WALSH AND BEFORE THE DISTRICT OF ARIZONA.  AND THE

9   DISTRICT OF ARIZONA ACTUALLY SAID THAT THE HANDWRITTEN

10  INTERLINEATED VERSION OF THE AGREEMENT HAS A MINIMAL PROBATIVE

11  VALUE.  AND WE'VE JUDICIALLY NOTICED THAT AT DOCKET 6-3.

12       AND JUDGE WALSH IMPLICITLY REJECTED THOSE ARGUMENTS

13  WHEN HE GRANTED CNA'S APPLICATION FOR THE -- FOR THE FULL

14  REQUESTED AMOUNT, THE 5.8 MILLION.

15       AND WE SUBMIT THAT YOUR HONOR SHOULD DO SO AS WELL.

16       THE COURT:  ALL RIGHT.

17       WHAT ABOUT THE ARGUMENT REGARDING THE SHORTFALL

18  ISSUE?  YOU'RE SAYING THAT THAT SHOULD BE DISREGARDED BECAUSE

19   -- I MEAN, HOW DOES THE INTER- --

20       MR. JOH:  WELL --

21       THE COURT:  -- THE INTERLINEATED VERSION AFFECT THAT

22  CALCULATION?

23       AND WHAT ABOUT -- AND HOW PRECISE DOES PLAINTIFF'S

24  ABILITY TO CALCULATE THE AMOUNT THAT IT CONTENDS IT IS ENTITLED

25  TO EXECUTE ON ITS WRIT OF ATTACHMENT.  HOW PRECISE DOES THAT

1  HAVE TO BE?

2        AND IT SEEMS LIKE THERE IS A -- THERE'S A FIGURE THAT

3  -- THERE'S SORT OF A MINIMUM FIGURE HERE THAT BOTH PARTIES

4  WOULD AGREE TO.  AND THEN THERE'S --

5        MR. JOH:  -- I AGREE THAT --

6        THE COURT: -- DISAGREE ON.

7        MR. JOH:  IT APPEARS THAT THE DEFENDANTS CONCEDE THAT

8  MR. NISSANI AND THE DEALERSHIP DEFENDANTS OWE AT LEAST A

9  MINIMUM SUM AMOUNT TO CNA UNDER SOME VERSION OF THE OVERRIDE

10  AGREEMENT.  AND THEREFORE IF -- THE DEFENDANTS' ARGUMENTS ARE

11  THAT THIS -- THAT THIS OTHER VERSION OF THE OVERRIDE AGREEMENT

12  AFFECTS THE PROBABLE VALIDITY OF CNA'S CLAIMS, WELL, IT

13  DOESN'T.  IT MAY REDUCE THE AMOUNT FOR WHICH THEY ARE LIABLE,

14  BUT IT DOESN'T -- IT DOESN'T CHANGE THE FACT THAT THE

15  DEFENDANTS OWE SOME AMOUNT TO CNA UNDER THE OVERRIDE AGREEMENT.

16        AND THEY HAVEN'T -- THEY HAVEN'T -- AND WE DISCUSSED

17  THAT THE REINSURANCE AGREEMENTS DO NOT OPERATE TO REDUCE THE

18  AMOUNT OWED TO CNA AT ALL.

19        AND, OF COURSE, CNA DISPUTES THAT THE HANDWRITTEN

20  INTERLINEATED VERSION OF THE OVERRIDE AGREEMENT SHOULD HAVE ANY

21  EFFECT ON THE AMOUNT THAT -- THAT THE DEFENDANTS OWED TO CNA

22  AND HAVE NO EFFECT ON WHETHER OR NOT THEY ARE LIABLE TO CNA.

23  AND, THEREFORE, CNA HAS SATISFIED ALL STATUTORY ELEMENTS OF

24  OBTAINING ITS WRIT APPLICATIONS.

25        THE COURT:  WELL, SO, IF I FIND THAT YOU -- THAT CNA

1 HAS MET, YOU KNOW, THE FIRST STANDARD FOR ATTACHMENT, THAT THEY

2 HAVE MET THE STANDARD OF PROBABLE -- THE PROBABLE VALIDITY

3 STANDARD, HOW PRECISE DOES THE COURT NEED TO FIND THAT CNA HAS

4 MET THAT SECOND STANDARD, THAT THE ATTACHMENT AMOUNT IS FIXED

5 OR READILY ASCERTAINABLE?

6         MR. JOH:  WELL, I BELIEVE THE AUTHORITIES CITED IN

7 OUR BRIEFING SAY THAT WE NEED TO PROVIDE A CALCULATION OF HOW

8 WE ARRIVED AT AN AMOUNT.

9         AND THE SPREADSHEETS ATTACHED TO MR. LOUGHLIN'S

10 DECLARATION DO PRECISELY THAT.  AND JUDGE WALSH FOUND THAT TO

11 BE PERSUASIVE.  AND THE DEFENDANTS' OPPOSITION TO THOSE AMOUNTS

12 SHOULD NOT BE -- SHOULD NOT BE CONSIDERED BECAUSE THEY ARE

13 BASED ON AGREEMENTS THAT HAVE NO RELEVANCE TO THIS MATTER.

14         AND, OF COURSE, THEIR ARGUMENT DEPENDS UPON A

15 HANDWRITTEN VERSION OF THE AGREEMENT THAT ONLY THEY HAVE SIGNED

16 IN WHICH THE INTEGRATION CLAUSE AND OTHER CONTRACT'S PRINCIPLES

17 PROHIBIT THEM FROM RELYING UPON WHEN WE HAVE A FULLY INTEGRATED

18 AGREEMENT.

19         THE COURT:  ALL RIGHT.

20         MS. WRIGHT, DO YOU WANT TO BE HEARD FURTHER ON THIS?

21         MS. GARVIS WRIGHT:  BRIEFLY, YOUR HONOR.

22         THE HANDWRITTEN INTERLINEATION AND THAT VERSION OF

23 THE AGREEMENT AND MR. NISSANI AND THE DEALERSHIPS WHO ACTED IN

24 RELIANCE ON THOSE PROVISIONS IT CERTAINLY AFFECTS THE PROBABLE

25 VALIDITY OF THE CLAIM.  BUT IT ALSO AFFECTS THE CALCULATION OF

1    WHAT COULD POTENTIALLY BE OWED UNDER THE OVERRIDE AGREEMENT.

2         AND I HEARD CNA'S COUNSEL STATE THAT HANDWRITTEN

3    INTERLINEATIONS ONLY CHANGE WHETHER THE SHORTFALL PAYMENTS ARE

4    DUE MONTHS -- FROM MONTHLY TO QUARTERLY.  AND THAT IS SIMPLY

5    NOT THE CASE.  AND IF YOU LOOK AT THE FACE OF THE HANDWRITTEN

6    INTERLINEATIONS IT DELETES ENTIRELY THE REQUIREMENT OF HAVING

7    TO SELL 157 TIRE PRODUCTS A MONTH OR A QUARTER, WHICHEVER.  BUT

8    IT'S HANDWRITTEN -- THE HANDWRITTEN INTERLINEATIONS SHOW

9    QUARTER.

10        IT ALSO DELETES ENTIRELY THE OBLIGATION TO SELL 250

11   GAP PRODUCTS.

12        SO, IT GOES BEYOND JUST CHANGING THE TIMING OF WHEN

13   THE SHORTFALL FEE MIGHT BE CALCULATED.

14        AND, SO, THAT GOES TO THE ABILITY TO READILY

15   DETERMINE WHAT IS -- WHAT POTENTIALLY COULD BE OWED UNDER THE

16   CONTRACT.

17        AND TO ANSWER YOUR HONOR'S QUESTION ABOUT WHETHER

18   THAT HAS TO BE PRECISE, WE CONTEND THAT, OF COURSE, IT HAS TO

19   BE PRECISE.  BECAUSE A WRIT OF ATTACHMENT IS AN EXTRAORDINARY

20   REMEDY.  AND IT'S PARTICULARLY EXTRAORDINARY IN THIS CASE WHEN

21   CNA IS ASKING TO ATTACH THE PERSONAL ASSETS OF TWO INDIVIDUALS

22   WHEN IT ALREADY HAS MULTIPLE WRITS OF ATTACHMENT.  AND I

23   HAVEN'T SEEN ANY PROOF IN THESE PAPERS THAT THEY HAVE ATTEMPTED

24   TO EXECUTE THOSE WRITS AND, IN FACT, HAVE ONLY DEMONSTRATED TO

25   THIS COURT THAT TWO, POSSIBLY THREE, OF THE FIVE DEALERSHIP

1   ENTITIES HAVE NO ASSETS.

2           THE CASE LAW WE BELIEVE IS PERFECTLY CLEAR ON THIS

3   ISSUE.  AND WE CITED THE AUTHORITIES IN OUR PAPERS FOR THE

4   PROPOSITION THAT ALTHOUGH DAMAGES NEED NOT BE LIQUIDATED, THEY

5   MUST BE MEASURABLE BY REFERENCE TO THE CONTRACT SUED UPON.

6   AND THEIR BASIS MUST BE REASONABLE AND SEARCHING.  SO, THEY

7   HAVE TO BE PRECISE.  AND THAT CNA CANNOT BEAT THAT IN THIS

8   CASE.

9           THE COURT:  ALL RIGHT.

10          I HAVE A QUESTION FOR YOU, MR. JOH.

11          WHY WOULDN'T THE AMOUNT THAT CNA CLAIMS IS OWED TO

12  IT, THE 5 MILLION PLUS FIGURE, BE REDUCED BY THE 1,350,000

13  FIGURE THAT DEFENDANTS CONTEND WAS ACTUALLY PAID BY THEM DURING

14  THE -- DURING THE PERIOD OF THIS CONTRACT?

15          MR. JOH:  YOUR HONOR, WE DISPUTE THE DEFENDANTS'

16  CALCULATIONS.  AND THE SPREADSHEET ATTACHED TO MR. LOUGHLIN'S

17  DECLARATION DOES ACCOUNT FOR PAYMENTS MADE OVER THE CONTRACTUAL

18  PERIOD THAT DEFENDANTS MADE TO CNA.  SO, IT'S NOT SIMPLY THE 5

19  MILLION PLUS INTEREST BASED UPON THAT AMOUNT.  BUT, RATHER,

20  IT'S A -- IT WAS A CHANGING FIGURE BASED UPON AMOUNTS OWED,

21  AMOUNTS PAID BACK, SHORTFALL FEES AND SO FORTH.

22          SO, IT'S NOT JUST SIMPLY BASED UPON THE PRINCIPAL 5

23  MILLION.  IT TAKES INTO ACCOUNT PAYMENTS THAT WERE MADE AND

24  CREDITS THAT WERE GIVEN TO THE DEFENDANTS.

25          THE COURT:  OKAY.

1              IF THERE'S NOTHING FURTHER, THEN, I'LL TAKE THIS

2    UNDER SUBMISSION AND ISSUE AN ORDER.

3              MS. GARVIS WRIGHT:  THANK YOU VERY MUCH, YOUR HONOR.

4              MR. JOH:  THANK YOU, YOUR HONOR.

5              MR. GODWIN:  THANK YOU.

6              THE COURT:  ALL RIGHT.

7              THANK YOU.

8              WE'RE OFF THE CALL.

9              (TELEPHONIC PROCEEDINGS CONCLUDED.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

24

1

2                        C E R T I F I C A T E

3

4

5          I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
    FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE
6   ABOVE-ENTITLED MATTER.

7

    /S/ DOROTHY BABYKIN                    1/6/21
8   _____       _____
    FEDERALLY CERTIFIED TRANSCRIBER        DATED
9   DOROTHY BABYKIN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25